## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

MICHALE HOFFMAN,

     Plaintiff,

v.

Case No.: **3:24-cv-01369-TJC-PDB**

DANIEL JONES, in his official and personal capacities, RALPH DEMPSEY REVELS, in his official and personal capacities, DAVID GRAY, in his official and personal capacities, DALE ALLEN, in his official and personal capacities, and MARK MURDOCK, in his official and personal capacities,

     Defendants.

_____/

## **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, WITH PREJUDICE, AND , IN THE ALTERNATIVE, TO STRIKE CERTAIN REQUESTS FOR RELIEF**

Plaintiff, MICHALE HOFFMAN, hereby opposes the Defendant's above filed motion (ECF. 45) for several reasons, which will be clarified later in this response. The Defendant's counsel has been acting in bad faith from day one of their involvement and on numerous occasions has intentionally misled this Court as well as belittled the Plaintiff with comments such as comparing Plaintiff's legal prowess to that of a convicted inmate. The facts in this case are very clear and in

fact 100% of it was captured on government controlled body worn cameras which evidence the Defendant's actions stated in the Plaintiff's Second Amended Complaint (ECF. 43). The Defendant's above captioned motion should be denied in part because their specific defenses lack merit, and in some cases are misapplied, as will be further explained in this response.

As Plaintiff readily acknowledges, he is not an attorney, and has zero legal schooling, Plaintiff herby responds in the following manner. Each section of the Defendant's MTD (ECF. 45) will be address individually for clarity.

The first response is directed towards Defendant's MTD (ECF. 45) page 5 & 6, **"Legal Standard"**  The Defendants take great effort in citing several cases to explain how this case is to be dismissed for failure to state a claim. However, it is the Plaintiff's position that a <u>very clear,</u> short, and plain statement of the claim was provided in which the Court can reasonably infer that the Defendant's are liable for the misconduct alleged, as well as understand what each Defendant is being accused of. The Plaintiff's position is that the Defendant's are simply wrong in their analysis that Plaintiff's Second Amended Complaint is deficient.

The second defense the Defendant's put forth in the current MTD is, **"Plaintiff's Official Capacity Claims are Deficient** (ECF. 45), page 6 - 8. In this section, Defendant's argue that the Plaintiff's complaint does not allege several

factors needed to surpass muster for a "*Monell*" claim, including stating in the complaint the words "moving force". The Defendant's continued in stating, "Plaintiff attempts to circumvent *Monell* through hollow allegations, such as, that the Defendants were "acting through a policy, custom, or practice." The Defendant's continued further in stating that the Plaintiff had not "…pointed to an actual policy or established custom or practice…" What the Defendant's are failing to acknowledge to the Court is the Plaintiff only needs to make the allegation in the Second Amended Complaint. There is no precedent on how many times the allegation is made, simply that the claim is made. Plaintiff made it very clear in the Second Amended Complaint (ECF. 43) that as a result of the custom, policy, pattern, or practice of the Nassau County Sheriff's Office (NCSO), that Private Investigators were **required** to call in to dispatch and notify them of their presence in the area, Plaintiff's civil rights were violated. The fact that Plaintiff did not "call in", was the moving force behind the Defendant's actions. Those exact sentiments were clearly conveyed in the Second Amended Complaint (ECF. 43). Finally, it is extremely prejudicial at this stage of litigation to dismiss the case given the fact that Plaintiff has not even been afforded the opportunity to develop the case under the direction of discovery. It is at the discovery phase that it would be expected to develop and bring to light facts surrounding the allegations made in the Second Amended Complaint (ECF. 43), including exposing any written or unwritten policies, customs, practices, or pattern, surrounding the matter at hand.

The third defense in the Defendant's current MTD was titled **The Second Amended Complaint Failed to Identify Which Claims Are Asserted Against Which Defendant's, Rendering them Deficient,** (ECF. 45), page 8 - 10. In the defense, the Defendant's claim that the Plaintiff did not identify which claims are brought against which Defendant's. This is simply not true. The Plaintiff took excruciating efforts to ensure that it was clear in the Second Amended Complaint (ECF. 43), which Defendant was being accused of which count.

The Defendant's continued in citing their perceived deficiencies with each count. In an effort to continue to be clear, each accusation in the Defendant's MTD will be address individually.

The Defendant's started off with **Count I** in which Defendant's counsel stated that he was confused on if the Plaintiff was asserting Count I against all Defendant's, except Defendant Sergeant Murdock. It is the Plaintiff that is confused as Count I clearly lays out each Defendants role in how they violated said count. Each Defendant is identified by specific name and followed by a narrative on what act they performed to violate the Plaintiff's right in said count. To be specific, in the Second Amended Complaint (ECF. 43), line 80 - 87, each Defendant is identified along with the act they committed in violation of the count. Plaintiff does not understand on how it could be made any clearer and with the

-4-

understanding that the Plaintiff is not an attorney, is acting Pro Se, and more importantly, acting in ***good faith.***

The next defensive position that Defendant's counsel put forth was in respect to **Count II.** Defendant's counsel stated that, "…Plaintiff does not allege any facts regarding attempting to complain to Sergeant Murdock, and Sergeant Murdock refusing to listen." It should be noted that the following was stated in the Second Amended Complaint (ECF. 43), line 97, "Defendant Murdock's intentional failure to facilitate his duties as a supervisor denied Plaintiff his due process rights in refusing to hear Plaintiff's valid complaints on Defendant Jones, Defendant Allen, Defendant Gray, and Defendant Revels." While not meaty in substance, the statement is a clear notification to Defendant Sergeant Murdock, of what he was being accused of in that Defendant Sergeant Murdock refused to hear the Plaintiff's complaints on the other Defendants resulting in the Plaintiff failing to receive his due process. The Defendant's counsel continued stating that it was unclear on how Defendant Sergeant Murdock failure to hear the Plaintiff's complaints prevented the Plaintiff from exercising his rights to record citizens in public. It is abundantly clear that had Defendant Sergeant Murdock performed his duties correctly as a supervisor and listened to the Plaintiff's complaints, he would have realized that the Defendants had errored and afforded the Plaintiff an opportunity to correct the lies that Defendant Jones had told Winn-Dixie management in order to solicit the trespass. Plaintiff further states, that at this stage

of litigation, the Defendant's counsel is once again premature in what they are requiring. The allegation was clearly made in the Second Amended Complaint (ECF. 43), that Sergeant Murdock refused to hear the Plaintiff's complaints. Discovery will develop more detail and evidence, once given the chance. Finally, the Defendant's counsel stated that they were unclear on whether any other Defendant other than Defendant Sergeant Murdock was being accused in Count II. The answer to that is simple, no. As it clearly states in Count II of the Second Amended Complaint (ECF. 43), line 97, Defendant Sergeant Murdock was the only Defendant listed as a causation in Count II.

The next defensive position that Defendant's counsel put forth was in respect to **Count III.** The Defendant's counsel stated that Plaintiff, "…failed to establish that all four deputies were responsible for or involved in Plaintiff's detention." That statement is completely ridiculous as all four of the Defendant's identified in Count III, were present, and actively involved in the matter at hand. Once again, the Defendant's counsel is premature with its position at this stage of litigation, as discovery will further develop facts and evidence in the specific matter.

In respect to **Count IV**, the Defendant's counsel asserted that the same issue with Count III, also applied to Count IV in that the facts failed to establish that all four deputies were responsible for or involved in the Plaintiff's false imprisonment / arrest claim. Once again, Defendant's counsel is premature with its

position at this stage of litigation, as discovery will further develop facts and evidence in the specific matter.

In respect to **Count V**, it is unsure what Defendant's are trying to convey. The defendant's counsel never indicates a deficiency in Count V; however, he does state that Count V is the same as Count I. The Defendant's counsel then goes on to state that Count V is the same as Count III. Both statements are false as Count I is for violation of the First Amendment, and Count III is for illegal detention, all the while, Count V is for failure to intervene. Each count has different facts supporting it as well as each count accounting for a different violation of rights and or law.

As the Defendant's counsel closed out the section, he reiterated his arguments, all of which the Plaintiff opposes.

The fourth defense in the Defendant's current MTD was titled **The Underlying Facts Do Not State a Plausible Claim for Counts I, II, or V.** (ECF. 45), page 11 - 17. The first section under this defense was the heading "First Amendment Retaliation". In this section, the Defendant's counsel stated, "Plaintiff implicitly asserts the properties are meant for public use, thereby evoking First Amendment protections, merely by the fact that they are open to the public." First off, Plaintiff made no such statement in the Second Amended Complaint (ECF. 43) Plaintiff made the following statements, "Plaintiff recorded his subject in a private

parking lot, accessible to the public." (ECF 43), line 74. Plaintiff further stated, "There is a First Amendment right to openly record another person on private property that is open to the public." (ECF 43), line 75. Defendant's counsel is saying that just because the Plaintiff was on private property, open to the public, that they loose their Constitutional rights. Defendant's counsel continued stating that because of that one determination of fact on their behalf, "…Plaintiff has not and cannot establish he had a First Amendment right to record people as he pleased on another private property." Plaintiff lets that statement stand alone as it speaks volumes of how little the Defendant's counsel understands the complexities of the First Amendment, the case law surrounding it, and the expression of it.

In the next section of the Defendant's MTD, the Defendant's counsel provided a very brief narrative of parts of the encounter. What the Plaintiff asks the Court to take note of is how the Defendant's counsel omits relevant facts and twists other facts in a manner that is in bad faith. For example, the narrative starts off with a police report being made. What is not mentioned is that the report was of ***legal activity***. The narrative continued in which it indicated that Defendant Jones went into Winn-Dixie and simply informed the store manager that the Plaintiff had been issued a trespass warning by Journey Church West for sitting in the parking lot filming kids. The narrative continues in which Defendant Jones asks the Store Manager if she wanted to issue a trespass warning to the Plaintiff as well, and she said yes. The Defendant's counsel continued in the narrative stating, "Defendant

Deputy Jones did state to the Winn Dixie manager that the Plaintiff said he was a private investigator and a search revealed he was not; however, this was after the manager already decided she wanted to issue a trespass warning to Plaintiff…" The problem is that the Defendants counsel intentionally left out of the narrative damning evidence that clearly implicates Defendant Jones in his actions. It was left out of the Defendant's narrative that Defendant Jones misled/lied to the store manager to elicit the trespass. The Defendant's counsel makes light of the fact that Defendant Jones only told the store manager that Plaintiff was **not a private investigator** after the fact that she agreed to authorize the trespass. The truth of the matter is that Defendant Jones's framed lie about the Plaintiff filming kids at the church, was 100% the catalyst to the granting of the trespass authorization, which was furthered fueled by the repeated lie (three separate occasions in a couple minute span) from Defendant Jones, that the Plaintiff claimed to be a Private Investigator; however, a search confirmed that he was not. Once again, the Defendant's counsel leaves out the fact that not one single Defendant attempted to verify the Plaintiff's Florida State credentials presented mere seconds after being initially confronted nor did they investigate a single crime.

In the next part, the Defendant's counsel stated, "…it is wholly unclear what speech Plaintiff engaged in that he believes underpinned Deputy Jones' retaliation." Defendant counsel continued stating for that reason alone, the Plaintiff had failed to state a claim. It is very clear that Defendant Jones was

retaliating against Plaintiff's First Amendment right to film what the eye can see in an environment where there is no reasonable expectation of privacy. The Defendant's counsel closed the section out with the following statement, "Moreover, there is nothing unlawful about a law enforcement deputy advising a property owner that there is a man filming people near the business without their consent or perhaps knowledge, on their property. And that is exactly what Plaintiff was doing." Defendant's counsels statement is a glaring representation of Plaintiff's allegation that Defendant's counsel is acting in bad faith as his statement could not be farther from the truth. By the Defendant's counsels standard that he is asking the court to entertain, is that any law enforcement officer can makeup any lie about someone they want in order to elicit a trespass. For example, according to the Defendant's counsel, it wants this Court to believe that a law enforcement officer can tell a business owner/agent that a person who has been reported to be committing legal activity on private property, that law enforcement can report that same person as actually in fact raping a girl in the parking lot of the business, so that would "guarantee" the granting of a trespass approval. In the Defendant's counsels eyes, that would be "legal". That is absurd.

In furtherance of the MTD, the Defendant's counsel stated the following, "It is not entirely clear what conduct of Deputy Gray Plaintiff claims constitutes "retaliation". For this reason alone, Plaintiff has failed to state a claim." It is clear from the Second Amended Complaint (ECF 43) what conduct Defendant Gray is

accused of in respect to retaliating against the Plaintiff. It was clearly stated that Defendant Gray illegally/wrongfully detained the Plaintiff, acted in violation of policy and law in respect to the handling of trespassing, and ordered Defendant Jones to go into Winn-Dixie to solicit a trespass. All this was done due to the fact that Defendant Gray was frustrated/irritated/upset with the fact that the Plaintiff had not called into the Nassau County Sheriff's Department to report that he was working in the area. Plaintiff asks the Court to consider once again the fact that the Defendant's counsel is premature in his defenses in that at this stage of litigation, he is requesting that the case be dismissed with prejudice without the Plaintiff having a chance in discovery to further identify and develop evidence to further validate the claim.

The Defendant's counsel continued in stating in the MTD, "To the extent Plaintiff contends he was detained in a retaliatory animus, in truth, Plaintiff's refusal to provide more information made the Defendant deputies more concerned Plaintiff was watching children for some nefarious and potentially unlawful reason." Once again, the Defendant's counsel frames the matter in a bad faith manner when in truth, Defendant Gray, who was the responding Deputy, was provided a valid Florida State issued Private Investigators license as well as the explanation that the Plaintiff was not watching children, but was in fact a licensed private investigator and was working a worker's compensation case in which the subject was an **adult female**. All this was done within seconds of the initial contact

-11-

from Defendant Gray. No reasonable law enforcement officer acting in good faith would come to the conclusory determinations that the Defendant's counsel has come to given the circumstances as they unfolded, which by the way are once again 100% evidenced on governmentally controlled body worn cameras.

In closing in this section (ECF 45), page 14, the Defendant's counsel exerted a qualified immunity defense to the First Amendment retaliation claim. Defendant's counsel went on to cite numerous cases, none of which are applicable in this matter. Plaintiff simply states that the Defendant's are not entitled to qualified immunity for at least two specific reasons. Even in the cases cited by the Defendant's counsel, it states, "The doctrine of qualified immunity shield officials from the civil liability so long as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have know." The Defendant's problem is multi pronged here. First, they fail as a reasonable law enforcement officer would have known that you can not detain a person to issue a trespass warning. Secondly, a reasonable law enforcement officer would have interpreted the scene for what it was and released the Plaintiff without any further intrusions, as the fact stands that **no criminal activity** was reported by either Journey West Church or Winn-Dixie. Additionally, a reasonable law enforcement officer wold know that lying about the facts of a event to solicit a trespass is simply **wrong.** Further in the Defendant's qualified immunity defense he stated, "A government official raising the defense of qualified immunity must establish he

was acting within the scope of his discretionary authority." It is clear that the Defendant's were acting outside of their official authority in that first off, they were responding to a call for service of a **legal activity**. No crimes had been committed, were being committed, or planned on being committed. The Defendant's were so short of RAS or PC of a crime, Defendant Jones had to lie to Winn-Dixie management in order to solicit a trespass. That not being bad enough, Defendant Jones continued with his lies saying three different times in approximately two minutes, that the Plaintiff lied about being a private investigator. Then when Plaintiff confronted Defendant Jones after he exited Winn-Dixie from soliciting the trespass, he lied to the Plaintiff about what he said to Winn-Dixie management to get authority to issue the trespass.

In the next section of the MTD, titled **Due process**, the Defendant's counsel stated, "Plaintiff has not and cannot show a constitutionally protected liberty interest in filming as he pleases on private property, against a property's owners consent." The Defendant's counsel then cited *Watkins v. Miller, 782 Fed. Apps. 770, 773 (11th Circuit. 2019)*. The Defendant's counsel then cites from the case talking about how there was no protected liberty interest in "remaining" on the property. As the Defendant's counsel has done many times, they have misrepresented cited cases in a manner that is not applicable to the instant case. Nowhere has the Plaintiff asserted a right exists to remain on private property to do anything after being asked to leave the property by an authorized agent of the

-13-

property. The cited case is in no way applicable to the instant case.

In the next section of the MTD, titled **Failure to Intervene**, the Defendant's counsel cites several cases in which he claims supports the position that no existing case law precedent exists that quantifies the requirement that law enforcement has a duty to intervene unless it is to stop excessive force. Plaintiff has only the argument that this Court does not need case precedent to set a standard that is just and fair and in the spirt of the law. In what civil society do we live in, in which a law enforcement officer can knowingly stand by and let a fellow governmental agent violate a citizens rights, then justly claim he has no liability and or accountability?

The fifth defense in the Defendant's current MTD was titled **Defendants are Entitled to Statutory Immunity and Count IV Otherwise Fails.** (ECF. 45), page 17 - 18.  Plaintiff's response to Defendant's position is that the Florida legislature has been clear that its waiver of sovereign immunity under § 768.28 does not apply to federal civil rights actions. It is also stated that the U.S. Supreme Court case *Howlett v. Rose*, 496 U.S. 356 (1990), which arose from Florida, confirms this principle. In that case, the Florida Supreme Court attempted to apply its sovereign immunity defense to a § 1983 claim in state court, but the U.S. Supreme Court held that states cannot apply their own sovereign immunity laws to bar federal claims under § 1983, as this would violate the Supremacy Clause. Should both of those

points fail to move the Court, Plaintiff offers the following as an alternative. As stated in Florida's limited wavier of sovereign immunity, officers are offered protection, "…unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton an willful disregard of human rights, safety, or property." Given the opportunity to move forward with discovery, evidence will be collected to support that the Defendant's acted in bad faith and in wanton disregard of human rights.

The sixth and last defense in the Defendant's current MTD was titled **Plaintiff's Requests for Certain Relief Should be Stricken.** (ECF. 45), page 18 - 19. In this defense, the Defendant's counsel stated that there are three (3) Prayers for Relief that should be stricken. The first of which is a preliminary and permanent injunction enjoining "Defendants' restriction and forbid them from further threats and coercion." The defendant counsel continues stating that, "…there are no factual allegations which demonstrate any "real and immediate threat"…" The fact of the matter is that there was factual information in the Second Amended Complaint (ECF 43) detailing Defendant Murdock's malicious intent to further harass and violate the Plaintiff's civil rights by making the following statement to the Defendants immediately after the Plaintiff departed the area of Winn-Dixie and heading to Wendy's parking lot. "…know anyone that works at Wendy's? Said statement was a clear indication that Defendant Murdock wanted to try and contact Wendy's in retaliation. It should also be noted that once again, the

Defendant's counsel is premature in their position in that discovery will enable to cultivation of evidence to support the need for said relief. For instance, it should be noted that the Defendants all stated in their Internal Affairs interview in a general manner that they did nothing wrong and would not have done anything substantively different. This is even though Defendant Gray and Defendant Jones were found guilty in an Internal Affairs investigation to the matter at hand.

The second Prayer for Relief that the Defendant's counsel stated should be dismissed, is the relief for punitive damages. Once again, the Defendant's counsel is premature in the exertion of the defense in that at this stage of litigation, discovery has yet to be conducted in which evidence will be developed to support the claim and request for relief.

The third and final Pray for Relief that the Defendant's counsel stated should be dismissed, is the recovery of legal fess. This is laughable and further proof of the Defendant's intentional bad faith in that he has been told on multiple occasions in writing, and has admitted himself in documents presented to the court that I have had legal representation at one point early in the process. With said **brief** legal representation, came a very large legal bill that is in excess of $20,000. Said bill remains outstanding. Again, Plaintiff can't express enough how this is shining example of how the Defendant's counsel has repeatedly attempted to falsely present information to the court in a bad faith manner.

-16-

## **CONCLUSION**

For all the forgoing reasons, the Plaintiff respectfully requests the Honorable Court deny the Defendant's Motion To Dismiss the Second Amended Complaint, With Prejudice, and In the Alternative, To Strike Certain Relief and grant such other relief as the Court deems proper.

Dated this 30th Day of September 2025

Respectfully submitted,

*/s/ Michale Hoffman*
**Michale Hoffman (Pro Se)**
8607 Beechfern Ln E.
Jacksonville, Florida 32244
Email - **usslooney@msn.com**
Tel - 904-993-2911

## **CERTIFICATE OF SERVICE**

The undersigned Plaintiff certifies that on this 30th day of September 2025, a true and correct copy of the foregoing was electronically filed in the U.S. District Court, Middle District of Florida, Jacksonville Division via personal delivery to the Clerks office and emailed to the Defendant at the at the following email address, mspellman@sniffenlaw.com and cPetruzzelli@sniffenlaw.com

/s/ Michale Hoffman
**Michale Hoffman**