UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHALE HOFFMAN,
     Plaintiff,

                                 Case No. 3:24-cv-1369-TJC-PDB
v.

DANIEL JONES, et al.,
     Defendants.

_____

**O R D E R**

**THIS CASE** is before the Court on Defendants' Motion to Dismiss Second Amended Complaint, With Prejudice, and, in the Alternative, to Strike Certain Requests for Relief. Doc. 45. Plaintiff, Michale Hoffman, proceeding pro se, has sued five Nassau County deputies, alleging violation of various rights, all arising from a thirty-minute interaction on June 5, 2024. Each deputy is sued in both his official and personal capacities.[1] Doc. 43 ¶¶ 2–6.

## I.    LEGAL STANDARD

The bare minimum a plaintiff must set forth in the complaint is found in Fed. R. Civ. P. 8 and explained further in Iqbal and Twombly. See Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). The complaint must contain "a short and plain statement of the claim showing that the pleader is

---

[1] Nassau County was a defendant in prior complaints but has since been dismissed. See Doc. 22. The Nassau County Sheriff's Office is not a defendant.

entitled to relief." Fed. R. Civ. P. 8(a)(2). As a pro se litigant, Hoffman's pleadings are liberally construed, but he must still comply with procedural rules. Roy v. Ivy, 53 F.4th 1338, 1346 (11th Cir. 2022) (citations omitted). A motion to dismiss may be granted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

## II.    FACTS

Hoffman is a private investigator and was on Journey Church property conducting surveillance on Wednesday, June 5, 2024, including filming someone with children leaving the church. Doc. 43 ¶¶ 15–16. After being observed, Hoffman was asked to leave Journey's property. Id. ¶ 17. Hoffman left, went across the street to a Winn-Dixie, and continued filming from the Winn-Dixie parking lot. See id. ¶ 18. Hoffman's continued filming was reported to the sheriff. Id. ¶ 20.

Deputy David Gray responded. Id. ¶¶ 20–21. Hoffman told Gray he was a private investigator, presented his investigator's license, and told Gray he was not filming children. Id. ¶¶ 21–22. Gray asked what Hoffman was doing and Hoffman would not "disclose confidential information about the case." Id. ¶ 24. Gray asked if Hoffman had "called in" to notify the sheriff of his activity. Id. ¶¶ 25–28. Hoffman had not called in. Id. ¶ 25.

Because Hoffman would not disclose details of his investigation and had not called into the sheriff, Gray allegedly became irritated and accused Hoffman of a

2

"minor fictitious traffic violation on private property." See id. ¶¶ 24–27, 61. Gray held onto Hoffman's investigator's license, ordered Hoffman to "stand by for a minute," and requested backup. Id. ¶¶ 28–29. Four more officers showed up: Daniel Jones, Ralph Dempsey Revels, Dale Allen, and Mark Murdock. See id. ¶¶ 3–6.

Jones went into Winn-Dixie to speak with the manager.[2] Id. ¶ 34; Doc. 45-2. Jones told the manager Hoffman was parked randomly in the parking lot, filming people across the street (at Journey), including children. Doc. 43 ¶ 39; Doc. 45-2. The manager indicated a trespass warning should be issued to Hoffman. Doc. 45-2. As Jones gathered information for the trespass warning, he told the manager Hoffman came to Winn-Dixie after being told to leave Journey's property and stated (three times) that Hoffman claimed to be a private investigator but was not.[3] Id.; Doc. 43 ¶¶ 36–45.

---

[2] After arriving, Jones started recording via his bodycam. Generally, if the Court considers evidence outside the pleadings, a motion to dismiss should be converted into a motion for summary judgment. Baker v. City of Madison, 67 F.4th 1268, 1276 (11th Cir. 2023). This is not required, however, for evidence incorporated by reference if (1) the plaintiff refers to the evidence in the complaint, (2) that evidence is central to the plaintiff's claim, and (3) the evidence is undisputed, meaning authenticity has not been challenged. Id. Here, Hoffman cites the video in the operative complaint, Defendants provided the video as evidence supporting their motion to dismiss, and there is no challenge to authenticity. See Doc. 43 ¶¶ 39–42, Doc. 45 at 12, Doc. 45-2. Further, the Court's consideration of the video is limited to the interaction between Jones and the Winn-Dixie manager.

[3] After Jones interacted with Winn Dixie and returned to the parking lot, Hoffman asked Jones what Jones told Winn-Dixie. Doc. 45-2. Jones said "I told them you're out here parked illegally in your parking spot," Hoffman asked is that all, and Jones said yes. Id. Jones did not tell Hoffman he told Winn-Dixie that Hoffman claimed to be a private investigator but was not. See id.; Doc. 45 ¶¶ 49-

3

While Jones was in Winn-Dixie, Hoffman was detained and not able to leave. See Doc. 43 ¶¶ 35, 52. Jones knew Hoffman was "being detained by Defendant Gray, Defendant Allen, and Defendant Revels." Id. Hoffman left the parking lot after receiving a verbal trespass warning and being detained "approximately thirty minutes." Id. ¶¶ 64–65. Hoffman complains he was not able to challenge the solicitation of the trespass during the interaction and that Murdock would not listen to his complaints about other officers. Id. ¶¶ 96–97.

## III.  ANALYSIS

### A.  Overview

Hoffman alleges his thirty minute interaction with five officers amounted to improper detention and false imprisonment (Counts 3 and 4), the trespass warning was retaliation for exercising his First Amendment rights (Count 1), he was denied due process because he did not have an opportunity to "challenge the solicitation of the trespass warning" (Count 2), and the failure to intervene was a separate violation of his constitutional rights (Count 5). [4] Defendants allege multiple,

---

51. Later in the video, after Jones had gotten information for the trespass warning and had returned to the Winn-Dixie parking lot, Jones learns from another officer that Hoffman did present a private investigator license. Doc. 45-2. Hoffman alleges no Defendant attempted to verify his status as a private investigator, even though there is a data base and phone number for that purpose. Doc. 43 ¶ 30.

[4] Count 4 is under Florida state law. The other counts are federal claims, involving constitutional rights and 42 U.S.C. § 1983.

4

continuing problems with the operative complaint despite prior opportunities to amend. Hoffman argues his pleading sufficiently meets the standard.

### B.   The Operative Complaint is an Improper Shotgun Pleading

The operative complaint is Hoffman's fourth. See Docs. 1, 26, 33, and 43. The Court has previously provided guidance about shotgun pleadings, but the operative complaint is still shotgun.[5] The shotgun problems include that the complaint is not clear about which claims are brought against which defendants, or in which capacity (official or personal), and appears to lump different claims together in a single count or have duplicate claims in separate counts. See Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015).

No count specifies which defendant(s) it is brought against, although each count has some description of the alleged wrongdoing. For example, Count 1 is for First Amendment retaliation and mentions actions by all five defendants. It alleges Jones engaged in retaliation by issuing the trespass warning under Gray's direction, and that Allen, Revels, and Murdock failed to intervene. Doc. 43 ¶¶ 80–81, 87. Because Count 5 is for failure to intervene, it is not clear whether Count 1 is against all Defendants or only the two alleged to have engaged in a retaliatory action (Gray and Jones). Or, if Count 1 intends to argue the failure to intervene by Allen, Revels, and Murdock was itself retaliatory, it arguably duplicates some or

---

[5] In addition to feedback about shotgun pleadings, the Court has informed Hoffman about resources available to pro se litigants. See Docs. 21, 32, 35, and 42.

5

all of Count 5, and raises another "shotgun" concern because the retaliation and failure to intervene counts are not separate.

The other counts are similar. Count 2 generally alleges the "Defendant Officers [were] exercising their responsibilities under color of state law" and specifies Murdock refused to hear Hoffman's complaints about the other four defendants. Id. ¶¶ 95, 97. Even though it references more than one defendant, Hoffman's response asserts Count 2 is only against Murdock.[6] Doc. 48 at 5. Count 3 alleges "all four aforementioned Defendants [Gray, Jones, Allen, and Revels] detained [Hoffman] without his consent" and without reasonable suspicion. Doc. 43 ¶¶ 103, 108. This is conclusory and lacks support in the alleged facts as to actions by Jones, Allen, and Revels to support a detention claim. Id. ¶¶ 52, 53, 58–60. Count 4 identifies actions of four defendants (not Murdock) but also references "all" defendants. Id. ¶¶ 118–19 ("[a]ll Defendants . . . acted in concert to imprison" Hoffman, and "Jones, Revels, and Allen are liable for all of the Defendant's acts . . . ."). Count 5 mentions all five defendants, alleging four (Jones, Allen, Revels, and Murdock) failed to intervene when Gray violated Hoffman's rights. Id. ¶¶ 125, 127. It is not clear whether Count 5 is against Gray for a failure to intervene.

Accordingly, while Hoffman has made an effort to improve his pleadings, the operative complaint is still shotgun and is due to be dismissed.

---

[6] Defendants further argue there are no alleged facts supporting any attempt by Hoffman to complain to Murdock. Doc. 45 at 9.

6

C.       Federal Claims Against Defendants in their Official Capacity

The four federal counts[7] are premised on 42 U.S.C § 1983, which allows municipal liability for violation of constitutional rights if there is a policy, custom, or practice causing the alleged constitutional violation(s) (more than just employment of the alleged tortfeasor). See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 694 (1978). Therefore, each federal claim requires Hoffman show (1) he suffered a constitutional deprivation under "color of state law," and (2) the deprivation was the result of "an official government policy, the action[] of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." See Denno v. Sch. Bd. of Volusia Cnty., 218 F.3d 1267, 1276 (11th Cir. 2000). A "policy" is a decision officially adopted by the governmental entity, and a "custom" is an unwritten practice applied consistently enough to have the same effect as a policy with the force of law. Goebert v. Lee Cnty., 510 F.3d 1312, 1332 (11th Cir. 2007) (citations omitted). To establish the existence of a custom, a persistent and widespread practice must generally be shown. See Ireland v. Prummell, 53 F.4th 1274, 1290

---

[7] These are free speech retaliation (Count 1), denial of due process (Count 2), unlawful detention (Count 3), and failure to intervene (Count 5). "Official-capacity suits, in contrast [to personal capacity suits], generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) (citation modified). The Court presumes each § 1983 claim involves at least one defendant deputy sued in their official capacity and therefore is intended to assert a claim against the sheriff, who is not a party.

7

(11th Cir. 2022) (citations omitted). Therefore, each § 1983 (official capacity) claim must assert a policy or custom (not an isolated incident) that caused the constitutional violation.[8]

For all four § 1983 claims, the alleged policy is requiring private investigators to check-in with the sheriff. Doc. 43 ¶¶ 84, 99, 113, 128. For a variety of reasons, some applicable to more than one claim, Hoffman has not alleged a policy, custom or practice that resulted in adversely impacting his rights as required by Monell.

### 1.    Count 1 – First Amendment Retaliation (§ 1983)

A first amendment retaliation claim requires showing (1) Hoffman engaged in constitutionally protected speech, (2) the defendant's retaliatory conduct adversely affected that protected speech, and (3) a causal connection exists between the two. Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005), abrogated in part on other grounds by Pearson v. Callahan 555 U.S. 223 (2009). In Count 1, Hoffman alleges the retaliatory conduct was improperly soliciting a trespass warning from Winn-Dixie because Hoffman failed to check in with the sheriff, interfering with his First Amendment right to take photos or make recordings from a private space open to the public. See Doc. 43 ¶¶ 75, 80-83.

---

[8] The Court's analysis focuses on whether Monell requirements are met. To the extent the claims lack a constitutional right at issue, it is a separate reason the claims fail.

The alleged policy requiring Hoffman to "check-in" with the sheriff must be the direct cause of the trespass warning. It was not. Even if Gray issued the trespass warning because he was frustrated that Hoffman failed to check-in, there is no allegation the sheriff's office has a policy or custom of issuing trespass warnings because an investigator did not check-in.

### 2.      Count 2 -Denial of Due Process (§ 1983)

For his procedural due process claim, Hoffman must show: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process. Catron v. City of St. Petersburg, 658 F.3d 1260, 1266 (11th Cir. 2011). Count 2 alleges Hoffman was deprived of a "constitutionally-protected liberty [right] under the First Amendment to record citizens in places open to the public" and that he "suffered constitutionally-inadequate process in the absence of any formal process to challenge the solicitation of the trespass warning." Doc. 43 ¶¶ 94, 96. Hoffman specifically alleges Murdock "denied [Hoffman's] due process rights" because Murdock refused to hear Hoffman's complaint about the other defendants. Id. ¶ 97.

Even if Hoffman had a constitutionally protected due process right at issue (a doubtful proposition), there was no alleged policy, custom, or practice to deprive persons in Hoffman's situation of any due process right they may have had.

9

### 3.   Count 3 - Unlawful Detention (§ 1983)

Count 3 is for alleged unlawful detention. Hoffman alleges he was improperly detained because there was no reasonable suspicion of criminal activity.[9] Id. ¶ 105. Even in the light most favorable to Hoffman, there was reason to investigate. Hoffman's filming included children at Journey Church, even if children were not his primary subject. When asked to leave, Hoffmann moved across the street, continued filming, the sheriff was alerted, and Gray arrived on the scene. When Gray asked, Hoffman refused to share information about what he was doing, claiming he did not need to share information about his investigation. It was reasonable for Gray and the other officers to take steps to assess whether Hoffman's actions were illegal or posed any danger to children. The detention was relatively brief. And, Hoffman cannot satisfy Monell requirements of a policy, custom, or practice.

### 4.   Count 5 - Failure to Intervene (§ 1983)

Count 5 alleges the defendants failed to intervene in various circumstances, including failing to prevent Hoffman's allegedly illegal detention and failing to prevent deprivation of his First Amendment rights. Id. ¶¶ 124, 127. Hoffman alleges the Defendants "were acting in conformity with their existing custom, policy, pattern, or practice that Private Investigators were required to contact [the

---

[9] Hoffman concedes a brief investigatory stop is permitted when there is a reasonable, articulable suspicion of criminal activity. Doc. 43 ¶ 104.

sheriff] to notify [him] of the Investigators presence in the area." Id. ¶ 128. These allegations are not sufficient. The conclusory allegation about a policy to notify the sheriff about private investigator activity does not meet Monell requirements to support a § 1983 claim for failure to intervene. Nor is there a viable failure to intervene claim in the circumstances described.

### D.    Federal Claims Against Defendants in their Personal Capacity

The federal claims against the officers in their personal capacities face a different hurdle: qualified immunity.[10] Even if Hoffman can establish violation of a constitutional right, qualified immunity applies if the officers were "performing discretionary functions" and "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Est. of Cummings v. Davenport, 906 F.3d 934, 939 (11th Cir. 2018) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).[11]

---

[10] "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." Kentucky, 473 U.S. at 165–66.

[11] Qualified immunity has two parts. "First, we consider whether the plaintiff can establish a constitutional violation. Then, if the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated, we consider whether the right violated was clearly established. The plaintiff bears the burden at both steps." Baxter v. Roberts, 54 F.4th 1241, 1256 (11th Cir. 2022) (citation modified). Because Hoffman must establish both steps, the Court can analyze the steps in the order that makes sense. See Pearson v. Callahan, 555 U.S. 223, 232–43 (2009).

There is no dispute that the Defendants were acting within their discretionary authority in dealing with Hoffman. For the unlawful detention claim, the facts only allege that Gray retained Hoffman's investigator's license and ordered Hoffman to stay.[12] Doc. 43 ¶ 28. Hoffman must sufficiently allege that "(1) [Gray] violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." Ashcroft v. al–Kidd, 563 U.S. 731, 735 (2011) (quotation marks omitted). Hoffman argues detention is improper to issue a trespass warning, but the argument does not cite any cases or provide other authority to establish that the relatively brief detention while the officers ascertained whether Hoffman was committing any criminal activity, violated any clearly established right. See Doc. 48 at 12. Qualified immunity applies to Gray.

As for the failure to intervene personal capacity claims, even if Hoffman could establish a constitutional violation, Hoffman has not shown there is clearly established duty to intervene in any of the circumstances alleged, nor is the Court aware of any. In contrast, Defendants cite authority to show there is no duty to intervene to prevent third parties from obstructing speech. See Jackson v. Cowan, No. 18-13181, 2022 WL 393705 at *3 (11th Cir. Sept. 1, 2022). Other Eleventh

---

[12] Hoffman alleges while Jones was in Winn-Dixie, Jones was aware Hoffman was "detained and not free to leave the area." Doc. 43 ¶ 35. Even in the light most favorable to Hoffman, the allegations are legal conclusions that do not establish what actions by Jones, Allen, or Revels were improper. Accordingly, any personal capacity claims against Jones, Allen and Revels, would fail because any improper detention is attributable to Gray.

Circuit case law recognizes an established duty to intervene in cases involving excessive force and false arrest, but that's not this case. See Giddens v. Brooks Cnty., No. 21-11755, 2022 WL 836273 at *4 (11th Cir. March 21, 2022). Therefore, even if Hoffman stated a constitutional claim (again doubtful), qualified immunity would apply.

Similarly, for the free speech retaliation and due process claims, even if a constitutional right were involved (doubtful), Hoffman has not pointed to clearly established law that would overcome qualified immunity. The personal capacity claims are due to be dismissed.

E.    Count 4 - State Claim for False Imprisonment

Count 4 alleges a state law claim for false imprisonment/arrest.[13] See Doc. 43 ¶¶ 116–18. Defendants argue Section 768.28(9)(a), Florida Statutes, only allows Hoffman to sue a municipal officer in a personal capacity if the officer "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Hoffman says discovery is needed to show the officers "acted in bad faith and in wanton disregard of human rights." See Doc. 48 at 15. The Court disagrees; Hoffman must allege a sufficient cause of

---

[13] Hoffman alleges Gray acted improperly by causing Hoffman "to be wrongfully and forcibly seized" and that Jones, Revels, and Allen "aided and abetted" Gray's actions. Doc. 43 ¶¶ 116, 118.

13

action. He has not. Accordingly, the personal capacity claims of Count 4 are due to be dismissed.

As for official capacity claims, those are not properly bought against the officers under state law but should be brought against the sheriff. See Baxter, 54 F.4th at 1271; Doc. 35 at 17–18. Accordingly, any official capacity claims under Count 4 are due to be dismissed.

## IV.    CONCLUSION

Even if the shotgun pleading issues could be fixed, the scenario Hoffman alleges simply is not the stuff of a viable Section 1983 or state law claim. Having afforded Hoffman sufficient opportunity to state a claim, and finding that any further effort to amend would be futile, the Court will dismiss this case with prejudice.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion to Dismiss Second Amended Complaint, With Prejudice, and, in the Alternative, to Strike Certain Requests for Relief (Doc. 45) is **GRANTED.** This case is dismissed with prejudice.

2. The Clerk is directed to close the file and terminate any pending motions or deadlines.

14

**DONE AND ORDERED** in Jacksonville, Florida this 7th day of August, 2026.



TIMOTHY J. CORRIGAN
Senior United States District Judge

ddw
Copies:

Counsel of record

Michale Hoffman
8607 Beechfern Lane E.
Jacksonville, FL 32244

15